UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KYRSTEN STANFORD,                                    :
                           Plaintiff,         :
                                          :
                v.                                     :     No.  5:23-cv-03017
                                          :
AZZUR GROUP, LLC, *d/b/a* COBALT, LLC,               :
                        Defendant.          :

_____

**O P I N I O N**
**Defendant's Motion to Compel Arbitration, ECF No. 9 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                **March 4, 2024**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Krysten Sanford was formerly employed by Defendant Azzur Group, LLC

(hereinafter "Azzur").  After her employment was terminated, Stanford brought this action

against Azzur for alleged race and gender discrimination in violation of Title VII of the Civil

Rights Act of 1964.  Azzur filed a Motion to Compel Arbitration, requesting this Court to

dismiss this action, compel Sanford to arbitrate her claims, and award attorney's fees to Azzur.

Stanford opposes the motion.  For the reasons set forth below, the Motion to Compel Arbitration

is granted in part, and the matter is stayed pending arbitration.

## II.     BACKGROUND

Sanford began working as a Business Development Manager for Azzur in late January of

2022.  Compl., ECF No. 1, ¶ 9.  Before she began in that position, Sanford received an offer

letter with an attached nondisclosure and confidentiality agreement (hereinafter, collectively

referred to as the "Agreement"),[1] which she digitally signed on January 17, 2022.  *See* Mot.,

ECF No. 9, Ex. A ("Agreement") at 25 (exhibiting Sanford's digital signature after the statement

"I hereby accept this offer of at-will employment on the conditions set forth in this letter and in

the attached Confidentiality/Non-Disclosure Agreement").[2]  The Agreement took effect on

Sanford's start date, approximately one week later.  Agreement at 26.

The Agreement contained the following arbitration provision:

> In consideration of employment by the Company, and except as otherwise required by law, you agree that any disputes between you and Company relating in any way to your employment, including all disputes involving the hiring, termination, terms of employment, wages or any other disputes arising out of your relationship with the Company, will be submitted to final binding arbitration by a single arbitrator in accordance with JAMS' national rules for the resolution of employment disputes (the "JAMS Rules"), in the city and state where you are employed.  The JAMS Rules may be viewed on-line at "https://www.jamsadr.com/rules-employment-arbitration/," and judgment of any award rendered by the arbitrator(s) may be entered in any court having jurisdiction. Nothing in this Agreement, however, prevents you from filing an administrative charge/claim with any applicable state agency, the federal Equal Employment Opportunity Commission ("EEOC") (or comparable state agency), or the National Labor Relations Board, if and as required under applicable law. Any dispute regarding the nature of this Agreement, its scope or enforceability shall be decided, in the first instance, by the Arbitrator selected in accordance with the JAMS Rules.

Agreement at 23-24.  Further, the Agreement advised Sanford

> Make sure you have read and understand the foregoing. Except as otherwise set forth in this Agreement or otherwise precluded by law, by signing this Agreement, both you and Company, agree to waive the right to a jury and instead submit disputes arising out of or related to this Agreement or your employment to neutral, binding arbitration. You are under no obligation to sign this Agreement and may want to consult with an attorney before signing this Agreement.

Agreement at 24.

---

[1]     The offer letter and attached confidentiality agreement were altered and re-signed on two prior occasions, but the document discussed and referred to in this Court's decision is only the final signed agreement dated January 17, 2022.  *See* Mot., ECF No. 9, Ex. A.

[2]     For the Agreement, the Court has adopted the pagination assigned by the Electronic Filing System.

A little over a year after being hired, in March of 2023, Sanford's employment was terminated.  Compl. ¶ 12.  On August 7, 2023, Sanford brought this lawsuit, alleging that she was unlawfully terminated because of her race and gender in violation of Title VII of the Civil Rights Act of 1964.  *See* Compl. ¶¶ 30-52.  Azzur filed a Motion to Compel Arbitration, requesting this Court to dismiss this action, compel Sanford to arbitrate her claims, and award attorney's fees to Azzur for the fees and costs incurred to bring the Motion.  *See* Mot. at 5.  Stanford opposes the Motion, arguing that the Agreement is procedurally and substantively unconscionable and therefore unenforceable.  Resp, ECF No. 12.

III.    **LEGAL STANDARDS**

A.    **Motion to Compel Arbitration – Review of Applicable Law**

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

"However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists."  *Coulter v. Experian Info. Sols., Inc.*, No. 20-cv-1814, 2021 U.S. Dist. LEXIS 35175, at *9 (E.D. Pa. Feb. 25, 2021) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)).  *See also MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 402 (3d Cir. 2020) ("[U]nder section [four] of the [Federal Arbitration Act], courts retain the primary power to decide questions of whether the

parties mutually assented to a contract containing or incorporating a delegation provision.").

Therefore, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an

arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.

Additionally, "unless the party opposing arbitration challenges the delegation provision

specifically, the district court must treat it as valid and must enforce it by sending any challenge

to the validity of the underlying arbitration agreement to the arbitrator." *MXM Constr. Co.*, 974

F.3d at 399 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Think of a

delegation provision as a mini-arbitration agreement within a broader arbitration agreement

within a broader contract, something akin to Russian nesting dolls.") (cleaned up).

> **B.      Motion to Compel Arbitration – Standard of Review – Review of Applicable Law**

In deciding whether to compel arbitration, a district may either employ the motion to

dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary

judgment standard under Federal Rule of Civil Procedure 56.  *See MacDonald v. Unisys Corp.*,

951 F. Supp. 2d 729, 732 (E.D. Pa. 2013).  If arbitrability is not apparent on the face of the

complaint or if the non-moving party has "come forth with reliable evidence that is more than a

naked assertion . . . that it did not intend to be bound by the arbitration agreement, . . . the issue

should be judged under the Rule 56 standard." *Guidotti v. Legal Helpers Debt Resolution

L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted).  The summary judgment

standard is also applied if the parties rely on factual evidence outside the pleadings in arguing

that arbitration is or is not appropriate. *See Smeck v. Comcast Cable Commc'ns Mgmt., LLC*,

No. 19-cv-3625-JMY, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

Here, arbitrability is not apparent on the face of the complaint and Azzur's motion is

therefore evaluated under the summary judgment standard.

**C.       Motion for Summary Judgment under Rule 56 – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 257.  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  *See also Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)) ("A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable.").  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

*See also Antkowiak*, 455 F. App'x at 159 ("All reasonable inferences from the evidence are to be granted to the party opposing arbitration.").

## IV.   DISCUSSION

### A.   Agreement to Arbitrate

For the following reasons, the Motion to Compel Arbitration is granted.  First, the Court finds that there was an agreement to arbitrate. The formation of the Agreement is not at issue, and Sanford does not dispute that she digitally signed the Agreement when accepting her offer of employment. Accordingly, this Court finds that Sanford assented to the Agreement and, in doing so assented to the agreement to arbitrate contained within.  As a result, the parties formed a valid arbitration agreement, and this matter must ultimately be sent to arbitration.

Second, the Court finds that the parties clearly and unmistakably agreed to send issues of arbitrability first to the arbitrator.   "[T]o resolve questions of arbitrability, courts ask (1) if there is a valid agreement between the parties to delegate questions of arbitrability, and (2) whether the parties 'clearly and unmistakably' intended to delegate arbitrability questions." *Scott v. CVS*, No. 22-3314, 2023 U.S. App. LEXIS 11900, at *3 (3d Cir. May 15, 2023) (quoting *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142-44 (3d Cir. 2022)).  Here, the very last sentence of the arbitration provision contained what is commonly referred to as a "delegation clause," stating, "[a]ny dispute regarding the nature of this Agreement, its scope or enforceability shall be decided, in the first instance, by the Arbitrator selected in accordance with the JAMS Rules." *See* Agreement at 24.  Therefore, the Agreement unambiguously states that "[a]ny dispute" about the nature of the Agreement, including "its scope or enforceability" shall be decided by the arbitrator, and scope and enforceability issues are questions of arbitrability.  *See Coulter v. Experian Info. Sols., Inc.*, No. 20-1814, 2021 U.S. Dist. LEXIS 35175, at *10-11 (E.D. Pa. Feb.

25, 2021) (holding that the arbitration clause contained a "'clear and unmistakable' delegation clause" where it "delegate[d] the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision[,]" and because the plaintiff had "not specifically disputed the Delegation Clause[,]" the "arguments as to the scope and enforceability of the Arbitration Provision f[e]ll under the arbitrator's authority").

Although Sanford argues that the Agreement is unconscionable and challenges its enforceability as a whole,[3] Sanford never mentions the delegation clause, let alone specifically argue it is unenforceable or unconscionable.  Therefore, without a specific challenge to the delegation provision, this Court is required to treat the provision as valid and enforce it pursuant to section four of the Federal Arbitration Act.  Pursuant to the language in the Agreement requiring questions of enforceability to first go to arbitration, Sanford's unconscionability challenges are for the arbitrator to decide, not this Court.  *See Steinberg v. Capgemini Am., Inc.*, No. 22-489, 2022 U.S. Dist. LEXIS 146014, at *8 (E.D. Pa. Aug. 15, 2022) (holding that the plaintiff's "unconscionability objections should be resolved by the arbitrators" where the plaintiff had "failed to challenge the delegation provision specifically").

Accordingly, this Court finds that Sanford assented to Azzur's Agreement and, in doing so assented to the Arbitration Clause contained within.  As a result, the parties entered into a valid arbitration agreement, and this matter must be sent to arbitration.

---

[3]     Sanford also specifically challenges the enforceability of the fee-shifting provision of the Agreement, as well the portion of the arbitration provision about the selection process of the arbitrator through JAMS' national rules. *See* Resp. at 13, 14 (adopting the pagination assigned by the Electronic Filing System).

**B.      Request for Attorney's Fees**

Azzur's request for attorney's fees must also be arbitrated.  As previously mentioned, the Agreement unambiguously states that "*any* disputes" arising out of the parties' relationship or "arising out of or related to this Agreement" must be submitted to "neutral, binding arbitration." *See* Agreement at 24 (emphasis added).  Whether or not Sanford owes Azzur attorney's fees or other costs related to the litigation of this Motion is a dispute arising out of and related to the Agreement, and therefore Azzur must submit that issue to the arbitrator as well.

**V.      CONCLUSION**

Stanford voluntarily assented to Azzur's employment offer letter and confidentiality agreement, which contained an agreement to arbitrate.  Because of the enforceable delegation clause contained within the Agreement and Stanford's failure to challenge the delegation clause itself, her arguments about unconscionability must also be arbitrated.  Azzur's request for attorney's fees likewise must be arbitrated.  Azzur's Motion to Compel Arbitration is therefore granted in part, and the above-captioned case is stayed pending resolution of arbitration.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge